(637 P.2d 424)

No. 52,292

DAVID MOUBER and RITA MOUBER, JAMES F. PENNINGTON and NANCY PENNINGTON, HOWARD VANDERVORT, JOHN JURCO and DONNA JURCO, *Appellants,* v. THE CITY OF PRAIRIE VILLAGE, A Municipal Corporation, THE McDONALD'S CORPORATION, *Appellees.*

Opinion filed December 3, 1981.

*Marvin E. Rainey,* of Rainey & Wiglesworth, of Overland Park, for appellants.

*Donald Jarrett* and *Charles E. Wetzler,* of Bennett, Lytle, Wetzler, Winn & Martin, of Prairie Village, for City of Prairie Village, appellee.

*A. C. Cooke,* of Cooke, Ballweg, Borth, Wilson & Simpson, of Prairie Village, for The McDonald's Corporation, intervenor-appellee.

Before JUSTICE FROMME, presiding, PARKS, J., and B. MACK BRYANT, District Judge Retired, assigned.

FROMME, J.: This action was brought in the district court to determine the reasonableness of the order of the Board of Zoning Appeals of the City of Prairie Village, Kansas, in approving the issuance of a building permit to The McDonald's Corporation for the construction of a restaurant at the northeast corner of 83rd Street and Somerset Drive. This action is authorized by K.S.A. 12-715 which in pertinent part reads:

"Any person, official or governmental agency dissatisfied with any order or determination of said board [city board of zoning appeals] may bring an action in

the district court of the county in which such city is located to determine the reasonableness of any such order or determination."

Plaintiffs-appellants are residents in the vicinity of the proposed restaurant. They object to the issuance of the building permit because of anticipated problems with traffic and litter which they allege will result from the proposed McDonald restaurant, if it is built and operated. The location for the restaurant is zoned C-2, general business district. A restaurant is a lawful business to be operated in a C-2 zoned district. However, a drive-up or drive-in establishment is not permitted in C-2 zoning.

A drive-in establishment is defined in Section 19.02.330 of the Prairie Village zoning code as:

" 'Drive-in establishment' means any restaurant, financial institution or product vending enterprise where the patron does not enter and remain within a building during the transaction of his business. Food vending establishments where the food is not normally consumed within a building or where facilities are provided for eating outside a building, shall be included in this definition. (Ord. 1303 § 2 (part), 1971.)"

The reasonableness of the action of the Board of Zoning Appeals primarily depends on whether the restaurant proposed and now constructed by The McDonald Corporation is a "drive-in establishment" within the above definition. If it is a drive-in establishment, the use is prohibited under C-2 zoning and the order permitting such construction and use would be unreasonable. If it is not a drive-in restaurant or establishment as contemplated in the Prairie Village zoning code section 19.02.330, then the construction and use is proper as a restaurant and would be reasonable.

Before considering this primary question there are several procedural matters raised by appellants to be disposed of before we can return to the question.

When the action was filed in the district court, appellants asked for and obtained a temporary restraining order against construction. There was a mix-up in granting the order restraining construction of the restaurant because The McDonald Corporation had not been made a party to the original action when the application was filed. Thereafter McDonald's sought and received permission to intervene. At this time the issue had been joined on the petition as to the reasonableness of the action of the Board of Zoning Appeals in approving the issuance of the permit.

Motions to dismiss the temporary restraining order and to dismiss plaintiffs' petition were pending. The entire matter was taken under advisement and plaintiffs were given two weeks to file whatever response or brief they desired. The plaintiffs question the action of the court in deciding the case by dismissing their petition.

As shown by the partial transcript of proceedings, when the judge took the case under advisement he requested and apparently received a copy of the zoning ordinances, which contained the information on C-2 and C-3 zoning, and various other materials. Although the partial transcript does not indicate whether the memorandum decision of the Board of Zoning Appeals, the minutes of the meetings of the City Planning Commission, or the minutes of the Board of Zoning Appeals were formally introduced and admitted by the court as part of the record, these are a part of the record before this court (R. Vol. III). On reading the decision of the district court, it becomes apparent that these were considered by the court. In addition there is a letter written by the judge to the clerk of the court and made a part of the court file in which the judge states he did receive all these materials and did consider them in his deliberations. It seems clear the motion to dismiss was converted into a motion for summary judgment. K.S.A. 60-212(b) provides that when, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in K.S.A. 60-256. See *Collier v. Operating Engineers Local Union No. 101,* 228 Kan. 52, Syl. ¶ 1, 612 P.2d 150 (1980).

Plaintiffs complain that they were not given adequate opportunity to present material in opposition. They do not divulge what they desired to submit. The plaintiffs were given two weeks to submit a brief and any other pertinent material. They did file a brief in opposition but they failed to object to the court's procedure at trial level.

Regardless of the procedural confusion in this case, the question to be decided was whether the Board's decision was reasonable. See K.S.A. 12-715. That issue was submitted to the court for decision. The court requested, received, and considered matters outside the pleadings. The appellants had reasonable opportunity

to submit additional evidence, authorities, arguments, and objections in the trial court. There were no *material* facts in dispute. The court determined that the action of the Board of Zoning Appeals was reasonable. Once the trial court made that determination, it was merely a matter of semantics whether the court should have dismissed the petition or granted judgment in favor of the city. Anyway, we now have and will decide the question on appeal.

Before considering the primary question we should re-examine the scope of review in a zoning case. The rules are concisely stated in *Combined Investment Co. v. Board of Butler County Comm'rs,* 227 Kan. 17, 28, 605 P.2d 533 (1980):

"(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

"(2) The district court's power is limited to determining
(a) the lawfulness of the action taken, and
(b) the reasonableness of such action.

"(3) There is a presumption that the zoning authority acted reasonably.

"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

"(8) An appellate court must make the same review of the zoning authority's action as did the district court."

With these rules in mind we turn to the primary question on appeal—was the building permit issued and approved in violation of restrictions imposed on C-2 zoning because it permitted construction of a drive-in establishment? If so, the action of the Board was unreasonable and the decision of the district court must be reversed.

Based upon the record of proceedings before the City Planning Commission and City Council, and upon other background material adduced, the Board of Zoning Appeals made the following findings and conclusions:

"1.   The site of the proposed construction is presently zoned as zoning district C-2, general business district and has been so zoned since 1962;

"2. A restaurant is a proper building within a C-2 district;

"3. The proposed McDonald's is a restaurant within the provisions of the Prairie Village Municipal Code, Section 19.02.720.

"4. Performance standards, pursuant to Section 19.22.020 of the Code, for zoning district C-2 provides:

Drive-up or drive-in service may be provided, except where ready-to-eat food, including beverages, or where cereal malt beverages in any form are served, dispensed or otherwise change hands.

"5. Drive-in establishment is defined in Section 19.02.330 of the Prairie Village Code as:

any restaurant, financial institution or product vending enterprise where the patron does not enter and remain within a building during the transaction of his business. Food vending establishments where the food is not normally consumed within a building or where facilities are provided for eating outside a building, shall be included in this definition.

"6. The proposed building for McDonald's as finally approved, contains no drive-up window or facilities;

"7. The proposed building for McDonald's as finally approved, contains no facilities for eating outside the building and on the premises;

"8. All food at the proposed building will be prepared and served to customers within the building;

"9. The proposed building for McDonald's as finally approved, contains inside seating and tables to accommodate 122 persons; and

"10. McDonald's Corporation estimated that a minimum of 75% of the customers would consume the food within the building at the seats and tables provided."

Based upon these facts found by the Board and upon the evidence previously considered by the city authorities, we conclude the business establishment constructed by The McDonald Corporation is a restaurant and not a drive-in. A drive-in establishment is defined in the Prairie Village zoning code as a restaurant where the patron does not enter and remain within a building during the transaction of his business. The term restaurant is defined in the Prairie Village zoning code as a building wherein food is prepared and served in ready-to-eat form to the public for human consumption. Code section 19.02.720.

The proposed building for which the permit was issued satisfied the requirements of the zoning code. The building is designed, arranged, and intended for use as a restaurant; that is, a building where food is prepared and served in ready-to-eat form to the public for human consumption.

The structure has no outside eating facilities and has no drive-up window service. The patron must leave the car, enter and

remain in the building for the transaction of business. The food is prepared and is served within the building. Therefore, the structure is not a drive-in restaurant as that term is defined in the Prairie Village zoning code. This conclusion is made quite clear by comparing other provisions of this same zoning code which are made applicable to a zoning district C-3 in which drive-in service is permitted. Under code section 19.22.010 the code permits "Drive-in restaurants, refreshment stands, ice cream shops, etc., *where persons are served in automobiles*" in a C-3 zoning district. Emphasis supplied.

In contrast, code section 19.02.720 defines a restaurant as:

" 'Restaurant' means a building wherein food is prepared and served in ready-to-eat form to the public for human consumption. 'Restaurant' includes, but is not limited to, cafe, cafeteria, grill, pizza parlor, diner, snack shop, hamburger shop and steakhouse."

The present building of The McDonald's Corporation is designed and intended as a restaurant where food is prepared and served inside the building. No food will be served to persons in an automobile. The restaurant provides substantial seating and tables within the building. It is estimated by officers of the corporation that over 75% of the patrons will eat within the building. The building contains substantial seating. The seating capacity is for 122 persons and we conclude the food will be consumed normally within the building.

We turn now to a few cases from other states to assist in our final decision. In *Burger King of St. Louis, Inc., v. Weisz,* 444 S.W.2d 517 (Mo. App. 1969), Burger King applied for a permit to construct a building for use as a restaurant. Drive-in restaurants were excluded in the proposed location, restaurants were not.

The Missouri Court of Appeals looked to the specific building being proposed and concluded it had no "drive-in" features. Drive-in was defined as a place laid out and equipped so as to allow its patrons to be served or accommodated while remaining in their automobiles. Burger King's proposed building called for a seating capacity of 70 people. Off-street parking for 40 cars was proposed. There were to be no car-hops or take-out windows; no curb-side service. A limited menu of prepared food would be offered its customers. Patrons could eat inside or take their order away from the building. An attendant would be available to seat people and clean the premises. While it was not a full-service

restaurant offering table service with linen, china and silver, this did not change its essential method and manner of operation so that it could be described as a drive-in.

In *Ederer v. Bd. of Z. App.,* 18 Ohio Misc. 143, 248 N.E.2d 234 (1969), the Ohio court held that a franchise eating establishment was a "restaurant" within a permitted land use under a zoning ordinance, as opposed to a drive-in, which was not permitted. The proposed establishment would provide facilities inside the building for 72 persons to sit and consume food and drink. There would be no "car-hops," and no trays would be provided for persons to convey food and drink to their automobiles for outside consumption. It would be necessary for a patron to enter the building in order to be served. Under these facts it was held to be a restaurant, not a drive-in. See cases in Annot., Zoning Regulations—Restaurants, 82 A.L.R.2d 989, § 3.

We conclude, after making the same review of the zoning authority's action as did the district court, that the district court's judgment affirming the Board of Zoning Appeals should be and it is hereby affirmed.